# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

TOMMIE LEE MCDOWELL, JR.,

Plaintiff,

v.

DENNIS HOMAN, *et al.,*

Defendants.

Case No. 3:22-CV-00166-CLB

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

[ECF No. 70]

This case involves a civil rights action filed by Plaintiff Tommie Lee McDowell, Jr., ("McDowell") against Defendants Dennis Homan ("Homan") and Christopher Davis ("Davis") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF No. 70, 75, 83.)[1] McDowell responded, (ECF No. 79), and Defendants replied. (ECF No. 84.) For the reasons stated below, the Court grants Defendants' motion for summary judgment.

I.    **BACKGROUND**

A.    **Procedural History**

McDowell is an inmate in the custody of the Nevada Department Corrections ("NDOC"), who is currently incarcerated at the Northern Nevada Correctional Center ("NNCC"). On April 11, 2022, McDowell filed a civil rights complaint under 42 U.S.C. § 1983 for events that occurred while he was incarcerated at the Ely State Prison ("ESP"). (ECF No. 1.) On August 16, 2022, McDowell filed a second amended complaint ("SAC"), (ECF No. 14-1, 14-2)[2], which the Court screened pursuant to 28 U.S.C. § 1915A(a). (ECF

---

[1]    ECF No. 75 is an errata containing an affidavit showing proof of service of the motion for summary judgment, (ECF No. 70). ECF No. 83 is an errata containing authenticating declarations for exhibits to the motion for summary judgment.

[2]    To prevent a delay in the proceedings because McDowell did not follow proper procedures for filing a SAC, the Court combined two filings, (ECF Nos. 14-1, 14-2), into a single document constituting the SAC. (ECF No. 19 at 1-2.) The SAC was subsequently filed on the docket. (ECF No. 20.)

No. 19.) McDowell's complaint alleges Defendants conspired to and did deny him substantive and procedural due process protections in disciplinary actions that occurred in August 2021 and June 2022 relating to a mattress search on May 11, 2021. (ECF No. 20.) Based on these allegations, the Court allowed McDowell to proceed on four claims: (1) a Fourteenth Amendment procedural due process claim regarding the August 2021 disciplinary action against Homan ("Claim 1"); (2) a Fourteenth Amendment procedural due process claim regarding the June 2022 disciplinary action against Homan and Davis ("Claim 2"); (3) a Fourteenth Amendment substantive due process claim regarding the June 2022 disciplinary action against Homan and Davis ("Claim 3"); and (4) conspiracy to violate Fourteenth Amendment procedural due process rights about the August 2021 disciplinary action against Davis ("Claim 4"). (ECF No. 19 at 12-13.)

### B.   Factual Summary

McDowell's complaint is based on a search of his mattress in May of 2021 and two subsequent disciplinary actions which occurred in August of 2021 and June of 2022. The Court will address the facts of each event, which are undisputed unless otherwise noted.

### 1.   May 2021 Mattress Search

The events of this case started with an incident at NNCC involving a violent altercation between inmates. Specifically, according to Defendant Homan's sworn declaration, he was on duty on May 11, 2021, when there was a violent inmate altercation in Housing Unit 6, A wing. (ECF No. 70-5 at 3.) Following the altercation, A wing was locked down and officers began systematic cell searches to identify and remove weapons and other contraband. (*Id.*) As part of the cell searches, mattresses were removed from each cell. (*Id.*) A portable magnetometer was set up on the tier and staff conducted preliminary scans for concealed metal within the mattresses. (*Id.*) If the magnetometer alarm was activated, the mattress being scanned was separated from the mattresses which did not activate the alarm and marked with the cell number it came from. (*Id.*) The marked mattress was then delivered to the property room where it could be x-rayed. (*Id.*) During a process such as this, inmates would not be permitted out of their cells until all

1    items were removed from the tier, especially items with possible contraband. (*Id.*)

2    On May 11, 2021, charging employee A Brandon ("Brandon") wrote a notice of

3    charges for McDowell because Brandon found an inmate made weapon and a trimmer

4    head inside McDowell's mattress. (ECF No. 70-1 at 2; ECF No. 83-3.) The notice of

5    charges was served on McDowell on May 12, 2021. (ECF No. 70-1 at 3; ECF No. 83-3.)

6    McDowell disputes this fact and provides a sworn declaration stating he received the

7    notice of charges two weeks after the incident. (ECF No. 79 at 41.)

8    Homan was not operating the portable magnetometer that scanned McDowell's

9    mattress nor was he in the room when the mattress was x-rayed and opened. (*Id.* at 3-

10   4.) Homan states that he was called to the area near McDowell's cell during the removal

11   of his mattress "because McDowell was arguing with the officers about removing it." (*Id.*

12   at 4.) McDowell disputes this characterization and declares that he was simply explaining

13   how he wanted his mattress marked because the mattresses were similar in appearance.

14   (ECF No. 79 at 12.) In his declaration, Homan states he had no part in the investigation

15   of the altercation, in writing the Notice of Charges, or deciding whether charges should

16   be brought. (*Id.*)

17   On May 24, 2021, Curtis Rigney ("Rigney") held a preliminary hearing with

18   McDowell for the charge of possession of contraband. (*Id.*; ECF No. 70-2; ECF No. 70-5

19   at 4.) The preliminary hearing officer has the authority to amend or dismiss the charges

20   before they proceed to the actual disciplinary hearing. (ECF No. 70-2 at 3; ECF No. 70-5

21   at 4.) According to McDowell's sworn declaration, Rigney claimed to have reviewed video

22   evidence to corroborate McDowell's account of things but claimed he could not dismiss

23   the report outright. (ECF No. 79 at 41.) McDowell states Rigney said "he would have no

24   problem documenting himself as [McDowell's] witness." (*Id.*)

25   Defendants provide a sworn declaration from Rigney regarding the incident. (ECF

26   No. 70-2.) Rigney declares he did not tell McDowell he would review any evidence related

27   to the incident and could not corroborate McDowell's account of what happened. (ECF

28   No. 70-2 at 3.) According to Rigney, he did not tell McDowell that he lacked authority to

amend the charge in his disciplinary proceedings. (*Id.*) Rigney states he has never offered to be an inmate witness, whether for McDowell or any other inmate. (ECF No. 70-2 at 3.)

According to the summary of hearing officer's inquiry and disposition, McDowell pled not guilty and stated that Rigney and "A.W.O W Reubart" conspired against McDowell and planted contraband in retaliation for a lawsuit he filed against Reubart. (ECF No. 70-1 at 3; ECF No. 83-3.) The summary shows that McDowell was asked about witness information but did not want a witness. (*Id.*) Rigney then referred the charges to a disciplinary hearing. (*Id.*)

### 1.    August 2021 Disciplinary Action

McDowell's disciplinary hearing regarding the possession of contraband charge was held on August 18, 2021. (ECF No. 70-1 at 4-6, ECF No. 83-3.) The disciplinary hearing committee consisted of Davis, Homan, and Sgt. Allred, with Davis serving as the hearing officer. (*Id.*) Homan had previously been the Acting Administrative Lieutenant in charge of Disciplinary hearings but at the time was training Davis, who had just been appointed Administrative Lieutenant. (ECF No. 70-5 at 4.) Another person, Caseworker Morrow, was also present at the hearing, only in the capacity of observation for training purposes. (*Id.*) Homan states he did not call Rigney as a witness because he was the preliminary hearing officer who had the authority to dismiss the disciplinary charges after interviewing McDowell but referred the case for a disciplinary hearing instead. (*Id.*) As a result of the disciplinary hearing, McDowell lost canteen and phone privileges for 90 days and was assessed a charge of $59.83 to replace the damaged mattress. (ECF No. 70-1 at 5; ECF No. 83-3; ECF No. 70-9 at 22.)

### 2.    June 2022 Disciplinary Action

McDowell next alleges that, over a year after the mattress search, he was charged with restitution for medical treatment he allegedly received because of the violent altercation that prompted the search. (ECF No. 20 at 13-16.) McDowell alleges he was never given written notice of any charges stemming from the violent altercation, no disciplinary hearing was ever held, he did not receive a written disciplinary decision, and

4

1    was not allowed to present a defense. (*Id.*) According to McDowell's sworn declaration,

2    he "was not involved in any degree or capacity with the altercation." (ECF No. 79 at 42.)

3         On June 15, 2022, McDowell's inmate account was charged $176.71 for DOC

4    Sanction Type "Altercations." (ECF No. 70-9 at 3.) Sanctions for altercations are

5    processed by the medical department pursuant to Administrative Regulation ("AR") 245

6    and Operational Procedure for Support Services SS-0041 ("OP SS-0041"). (*Id.*; ECF No.

7    70-8 at 9-11; ECF No. 83-2.) OP SS-0041 provides that inmates will be charged 100% of

8    the examination, diagnosis or treatment for injuries which result from altercations. (ECF

9    No. 70-8 at 9; ECF No. 83-2.) For altercation type injuries, Inmate Services first must

10   ascertain if an inmate was found guilty by reviewing the disciplinary report and other

11   documentation. (*Id.*) OP SS-0041 states that any previously reimbursed health care costs

12   later found to be incorrect will be refunded back to Inmate Services from the Medical

13   Division and the appropriate inmate count corrected to reflect the adjustment. (*Id.*)

14   According to his sworn declaration, Homan did not take action to impose any sanction on

15   McDowell on June 15, 2022. (ECF No. 70-1 at 4-6, ECF No. 83-3.)

16        **C.    Motion for Summary Judgment**

17        On January 19, 2024, Defendants filed the instant motion for summary judgment

18   arguing summary judgment should be granted because: (1) McDowell's allegations do

19   not rise to the level of constitutional violations; (2) Defendants are entitled to qualified

20   immunity regardless of any constitutional violations; and (3) any claims or causes of

21   action against Defendants in their official capacity must be dismissed. (ECF No. 70.)

22        On August 15, 2023, McDowell responded. (ECF No. 73.) McDowell reiterated the

23   allegations in his complaint and emphasized the hardships he alleged he faced because

24   of Defendants' actions. (*Id.*) McDowell disputes statements made in the exhibits to

25   Defendants' motion for summary judgment and argues Defendants failed to meet their

26   burden as the moving party to establish the absence of genuine disputes of material facts

27   on each issue. (*Id.*)

28        Defendants replied on August 29, 2023. (ECF No. 74.) In addition to reiterating

1  their initial arguments, Defendants argue McDowell did not comply with the Court's Local
2  Rules for responding to summary judgment motions by failing to cite to specific portions
3  of the SAC for his facts. (*Id.*)

4  **II.    LEGAL STANDARD**

5      "The court shall grant summary judgment if the movant shows that there is no
6  genuine dispute as to any material fact and the movant is entitled to judgment as a matter
7  of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The
8  substantive law applicable to the claim or claims determines which facts are material.
9  *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477
10 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of
11 the suit can preclude summary judgment, and factual disputes that are irrelevant are not
12 material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine"
13 only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at
14 248.

15      The parties subject to a motion for summary judgment must: (1) cite facts from the
16 record, including but not limited to depositions, documents, and declarations, and then
17 (2) "show[] that the materials cited do not establish the absence or presence of a genuine
18 dispute, or that an adverse party cannot produce admissible evidence to support the fact."
19 Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be
20 authenticated, and if only personal knowledge authenticates a document (i.e., even a
21 review of the contents of the document would not prove that it is authentic), an affidavit
22 attesting to its authenticity must be attached to the submitted document. *Las Vegas*
23 *Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements,
24 speculative opinions, pleading allegations, or other assertions uncorroborated by facts
25 are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v.*
26 *Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*,
27 935 F.3d 852, 856 (9th Cir. 2019).

28

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury

could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a pro se litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## III.   DISCUSSION

McDowell's case is currently proceeding on four claims: (1) a Fourteenth Amendment procedural due process claim about the August 2021 disciplinary action against Homan ("Claim 1"); (2) a Fourteenth Amendment procedural due process claim about the June 2022 disciplinary action against Homan and Davis ("Claim 2"); (3) a Fourteenth Amendment substantive due process claim about the June 2022 disciplinary action against Homan and Davis ("Claim 3"); and (4) conspiracy to violate Fourteenth Amendment procedural due process rights about the August 2021 disciplinary action against Davis ("Claim 4"). (ECF No. 19 at 12-13.) Although all claims involve the same set of facts surrounding the May 2021 mattress search, the claims can be separated into pairs based on which disciplinary action they involve. For clarity, the Court will first discuss the claims relating to the August 2021 disciplinary action, Claims 1 and 4, and then the claims regarding the June 2022 disciplinary action, Claims 2 and 3.

### A.   Claims 1 and 4

#### 1.   Claim 1 – Fourteenth Amendment Procedural Due Process

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving individuals of "life, liberty, or property, without due process of law."  U.S. Const.

amend. XIV, § 1. However, to invoke the procedural protections of due process, a plaintiff must first identify the protected liberty interest that is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Liberty interests may arise from the Constitution or from an expectation created by state statutes and prison regulations. *Id.*; *Neal v. Shimoda*, 131 F.3d 818, 827 (9th Cir. 1997).

Courts analyze procedural due process claims in two parts. First, the court must determine whether the plaintiff possessed a protected interest. If so, the court next compares the required level of process with the procedures the defendant observed. *Brown v. Ore. Dep't of Corrs.*, 751 F.3d 983, 987 (9th Cir. 2014). To prevail on a claim, plaintiff must have a protected liberty interest, and the defendant's procedures must be constitutionally inadequate. *Id.*

When an inmate faces disciplinary charges, due process requires that the inmate receive: (1) a written statement at least twenty-four (24) hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. *See Wolff v. McDonnell*, 418 U.S. 539, 563-570 (1974). "When prison officials limit an inmate's efforts to defend himself, they must have a legitimate penological reason." *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992).

"Chief among the due process minima outlined in *Wolff* [is] the right of an inmate to call and present witnesses and documentary evidence in his defense before the disciplinary board." *Ponte v. Real*, 471 U.S. 491, 495 (1985). Ordinarily, the right to present evidence is basic to a fair hearing. *Id.* However, "the prisoner's right to call witnesses and present evidence in disciplinary proceedings could be denied if granting the request would be 'unduly hazardous to institutional safety or correctional goals.'" *Id.* (citing *Baxter v. Palmigiano*, 425 U.S. 308, 321 (1976) (citing *Wolff*, 418 U.S. at 566)); *see also Hughes v. Rowe*, 449 U.S. 5, 9, and n. 6 (1980). While "prison officials may not

arbitrarily deny an inmate's request to present witnesses or documentary evidence", *see Graham v. Baughman*, 772 F.2d 441, 444 (8th Cir. 1985); *accord Bartholomew v. Watson*, 665 F.2d 915, 918 (9th Cir. 1982), "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses [or produce documentary evidence] that may create a risk of reprisal or undermine authority...." *Ponte*, 471 U.S. at 496. The burden of proving adequate justification for denial of a request to present witnesses or produce documentary evidence rests with the prison officials. *Id.* at 499; *Graham*, 772 F.2d at 445; *Bostic v. Carlson*, 884 F.2d 1267, 1273 (9th Cir. 1989). "[I]f state procedures rise above the floor set by the due process clause, a state could fail to follow its own procedures yet still provide sufficient process to survive constitutional scrutiny." *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994). Thus, an inmate's right to due process is violated only if he is not provided with process sufficient to meet the standards outlined in *Wolff*. *Id.*

The Court allowed McDowell to proceed on Claim 1 as to Homan only. (ECF No. 19 at 10.) McDowell alleges Homan's violations of his procedural due process rights resulted in McDowell losing canteen and telephone privileges for 90 days and being charged for the damaged mattress. (*Id.*) McDowell also alleges he was unconstitutionally denied an impartial hearing based on Homan's involvement. (*Id.*)

As a threshold matter, Defendants argue that McDowell did not possess a constitutionally protected liberty interest such that due process protections apply. (ECF No. 70 at 7-8.) In the alternative, Defendants argue McDowell was given all due process protections required under *Wolff*. (*Id.* at 7-13 (citing *Wolff*, 418 U.S. at 563-67).) Here, it is questionable whether McDowell possessed a constitutionally protected liberty interest given the nature of the disciplinary sanction resulting in 90 days loss of canteen and phone privileges and being charged $59.83 to replace the damaged mattress. (ECF No. 70-1 at 5; ECF No. 70-9 at 22.) However, for the reasons explained below, the evidence in the record shows that even if McDowell did have a constitutionally protected liberty interest, he was afforded all process due under the standard set by *Wolff*.

First, McDowell received proper notice of the disciplinary charge by receiving a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken. *Wolff*, 418 U.S. at 563-70. McDowell received advance written notice of the charges against him on May 12, 2021. (ECF No. 70-1 at 2.) The notice of charges included the nature of the charge and detailed the evidence against him. (*Id.*)

Next, the Court must determine whether McDowell was given an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security. *Wolff*, 418 U.S. at 570. Starting with the preliminary hearing, McDowell was asked if he wanted to present any witnesses and indicated he did not.  (ECF No. 70-1 at 3.) Thereafter, at the disciplinary hearing, McDowell was again asked if he wanted to call any witnesses and he responded that "[his] witnesses are pretty much gone" but was allowed to read statements he obtained from his witnesses. (ECF No. 70-4 at 9-10.)

In response to the motion for summary judgment, McDowell claims he asked Rigney to be a witness, Rigney agreed, yet he was not allowed to have Rigney as a witness. (ECF No. 79 at 41.) McDowell states Rigney said "he would have no problem documenting himself as [McDowell's] witness." (*Id.*) However, according to Rigney's sworn declaration, he did not tell McDowell he would review any evidence related to the incident and could not corroborate McDowell's account of what happened. (ECF No. 70-2 at 3.) The summary of the preliminary hearing shows that Rigney referred the charge to a formal disciplinary hearing, although he had the authority to dismiss the charge. (ECF No. 70-1 at 3; ECF No. 70-5 at 4.) Homan declared that because Rigney referred the case for a disciplinary hearing instead of dismissing it, he did not believe Rigney's testimony would support McDowell's version. (ECF No. 70-5 at 4.) This is an acceptable reason to decline to call a witness because "the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the

swift punishment that in individual cases may be essential to carrying out the correctional program of the institution." *Wolff*, 418 U.S. at 570. Additionally, review of the record establishes that McDowell never actually asked for Rigney to be a witness during the disciplinary hearing. (*See* ECF Nos. 70-4, 71.)

McDowell also alleges he was denied an impartial disciplinary hearing, which is a cognizable claim under the standards established by *Wolff*. 418 U.S. at 570-71. However, the evidence in the record establishes that Homan was not involved in the investigation of McDowell's mattress on May 11, 2021, other than by being present at the time. (*See* ECF No. 70-5.) Homan's only interaction with McDowell on that day occurred when Homan was called to the area near McDowell's cell during the removal of the mattress "because McDowell was arguing with the officers about removing it." (*Id.* at 4.) Homan declares he had no part in the investigation of the altercation, in writing the Notice of Charges, or deciding whether charges should be brought. (*Id.*) Therefore, McDowell was not denied an impartial disciplinary hearing based on Homan's involvement.

Finally, inmates must be afforded legal assistance where the charges are complex, or the inmate is illiterate. *Wolff*, 418 U.S. at 563-70. This concern is not present in the instant case, as the record reflects McDowell's ability to file and prosecute the instant case as a *pro se* party. McDowell's ability to litigate the instant case shows he is not illiterate, and the charges are not too complex. Thus, Defendants have presented evidence sufficient to meet their burden on summary judgment to show there are no disputes of material fact that McDowell was afforded all process due under the Fourteenth Amendment. *Soremekun*, 509 F.3d at 984.

As Defendants have met their initial burden, the burden shifts to McDowell to establish that a genuine dispute of material facts does exist. *Matsushita,* 475 U.S. at 586. Here, McDowell disputes the service date of the notice of charges. (ECF No. 79 at 9.) McDowell claims he was not served with the notice of charges until two weeks after May 11, 2021. (*Id.*) However, the process due under *Wolff* only requires that McDowell receive a notice of the charges more than twenty-four hours in advance of the disciplinary hearing.

1    Even accepting McDowell's version of the events, he still received the notice far in

2    advance of the August 2021 disciplinary hearing. Therefore, the exact date McDowell

3    received the notice is irrelevant. *Frlekin*, 979 F.3d at 644 (factual disputes that are

4    irrelevant to the main legal question of the suit are not material). Given the undisputed

5    evidence shows McDowell did receive the notice more than twenty-four hours in advance,

6    McDowell has not met his burden of establishing that a genuine dispute of material fact

7    does exist. *Matsushita,* 475 U.S. at 586. Therefore, Defendants are entitled to summary

8    judgment on Claim 1.

9                    **2.    Claim 4 – Conspiracy**

10        To state a § 1983 claim for conspiracy to violate one's constitutional rights, the

11   plaintiff must allege "specific facts to support the existence of the claimed conspiracy."

12   *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989). The plaintiff must show "an

13   agreement or meeting of the minds to violate constitutional rights," and "[t]o be liable,

14   each participant in the conspiracy need not know the exact details of the plan, but each

15   participant must at least share the common objective of the conspiracy." *Crowe v. Cnty.*

16   *of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010).

17        Conspiracy is not itself a constitutional tort under § 1983." *Lacey v. Maricopa Cnty.*,

18   693 F.3d 896, 935 (2012) (quotation omitted). Conspiracy may "enlarge the pool of

19   responsible defendants by demonstrating their causal connections to the violation . . . ."

20   *Id*. But "[i]t does not enlarge the nature of the claims asserted by the plaintiff," so "there

21   must always be an underlying constitutional violation." *Id*.

22        At screening, the Court allowed McDowell's claim that Defendants conspired to

23   violate his procedural due process rights about the August 2021 disciplinary action to

24   proceed against Davis only. (ECF No. 19 at 11.) As detailed above, Defendants' motion

25   for summary judgment is granted as to Claim 1, which is the underlying constitutional

26   violation that supports McDowell's conspiracy claim. Although Claim 1 was only allowed

27   to proceed against Homan, *not* Davis, Defendants' motion was granted because

28   McDowell was given all process due to him during his disciplinary action. The failure of

13

1   McDowell's underlying claim of constitutional violation dooms his conspiracy claim based

2   on those constitutional violations. *Lacey*, 693 F.3d at 935. Therefore, the Court grants

3   Defendants' motion for summary judgment as to Claim 4.

4   **B.   Claims 2 and 3**

5   As Claims 2 and 3 involve the same underlying facts and include overlapping legal

6   principles related to these claims, the Court will evaluate both claims together.[3] "The

7   concept of 'substantive due process,' semantically awkward as it may be, forbids the

8   government from depriving a person of life, liberty, or property in such a way that 'shocks

9   the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" *Nunez*

10  *v. City of L.A.*, 147 F.3d 867, 871 (9th Cir. 1993). To state a claim for deprivation of

11  substantive due process, the plaintiff must show "that a state actor deprived [him] of a

12  constitutionally protected life, liberty[,] or property interest[,]" *Shanks v. Dressel*, 540 F.3d

13  1082, 1087 (9th Cir. 2008), and the state actor's behavior "shocks the conscience." *Cnty.*

14  *of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998). "The protections of substantive

15  due process have for the most part been accorded to matters relating to marriage, family,

16  procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994).

17  "When reviewing the substance of legislation or governmental action that does not

18  impinge on fundamental rights," courts "do not require that the government's action

19  actually advance its stated purposes, but merely look to see whether the government

20  could have a legitimate reason for acting as it did." *Wedges/Ledges of Cal., Inc. v. City of*

21  *Phx., Ariz.*, 24 F.3d 56, 66 (9th Cir. 1994).

22  > To establish a violation of substantive due process. . . , a plaintiff is ordinarily
23  > required to prove that a challenged government action was clearly arbitrary
    > and unreasonable, having no substantial relation to the public health, safety,
    > morals or general welfare. However, where a particular amendment
24  > provides an explicit textual source of constitutional protection against a
    > particular sort of government behavior, that Amendment, not the more
25  > generalized notion of substantive due process, must be the guide for
    > analyzing a plaintiff's claims.
26

27  _____

28  [3]   The legal standard for Fourteenth Amendment procedural due process claims is provided above in the discussion of Claim 1.

14

*Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotation marks, and brackets omitted), *overruled in part on other grounds as recognized by Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086 (9th Cir. 2007); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841-42 (1998).

There is no question that an inmate's interest in the funds in his prison account is a protected property interest. *Scott v. Angelone*, 771 F.Supp. 1064, 1068 (D. Nev. 1991) *aff'd*, 980 F.2d 738 (9th Cir. 1992) (citations omitted). However, "[l]iability under [§] 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Therefore, a defendant must have personally acted to violate an inmates due process rights to establish liability under § 1983. *Id.*

The Court allowed McDowell to proceed on his Fourteenth Amendment substantive and procedural due process claims relating to the June 2022 disciplinary action against both Homan and Davis. (ECF No. 19 at 10.) McDowell alleged that, over a year after the mattress search, he was charged with restitution for medical treatment he allegedly received because of the violence which led up to the search. (ECF No. 20 at 13-16.) McDowell alleges he was never given written notice of any charges stemming from the violent altercation, no disciplinary hearing was ever held, he did not receive a written disciplinary decision, and was not allowed to present a defense. (*Id.*) He alleges the restitution assessment was made by Homan and Davis in their capacities as hearing officers for the events on May 11, 2021. (*Id.*)

On June 15, 2022, McDowell's inmate account was charged $176.71 for DOC Sanction Type "Altercations." (ECF No. 70-9 at 3.) Although the assessment of altercation related medical costs relies on the disciplinary report for justification, the actual imposition of the costs does not come from those in charge of the disciplinary proceedings. Rather,

NDOC rules and regulations make it clear that the Medical Division and Inmate Services assess the sanctions independent from the disciplinary process. Sanctions for alterations are determined by the Medical Division and Inmate Services is responsible for reimbursing the Medical Division when applicable. (*Id.*; ECF No. 70-8 at 11.) For alteration type injuries, Inmate Services is responsible for ascertaining whether the inmate was found guilty by reviewing the disciplinary report and other documentation. (*Id.*) Additionally, according to Homan's declaration, he had no part in investigating the alteration on May 11, 2021, and took no action to impose any sanction on McDowell on June 15, 2022. (ECF No. 70-5.)  This is sufficient to meet Defendants' burden of showing an absence of disputed material facts that neither Homan nor Davis violated McDowell's substantive and procedural due process rights because they were not involved in assessing the sanction. *Soremekun*, 509 F.3d at 984.

As Defendants have met their initial burden, the burden shifts to McDowell to establish that a genuine dispute of material facts does exist. *Matsushita,* 475 U.S. at 586. However, based on the evidence provided by Defendants, there is no evidence McDowell could provide which would show that Defendants were personally involved in assessing the sanction. *Ashcroft*, 556 U.S. at 676 (for § 1983 suits, a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution.) The evidence from Defendants shows that the disciplinary process is entirely independent from the process for assessing the sanctions. Therefore, without having to reach the issue of whether McDowell's rights were violated by any other individuals, Defendants are entitled to summary judgment as because Defendants were not personally involved. *Taylor*, 880 F.2d at 1045.[4]

///

///

///

---

[4]     As the Court finds that McDowell's claims fail on the merits, it need not address Defendants' other arguments or defenses in support of summary judgment.

IV.    **CONCLUSION**

     **IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment, (ECF No. 70), is **GRANTED** in its entirety.

     **IT IS FURTHER ORDERED** that the Clerk **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

     **IT IS SO ORDERED.**

     **DATED**:  March 14, 2024 .

**UNITED STATES MAGISTRATE JUDGE**

17